IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-CV-387-RJC-DCK

| ANGELA LOWE HEIDER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| EUGENE M. CARR III, and CARR | ) | |
| BLACKWELL & ASSOCIATES, P.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion To Quash Subpoenas" (Document No. 21). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion and the record, the motion will be granted in part and denied in part.

## I. BACKGROUND

Angela Lowe Heider ("Plaintiff" or "Heider") initiated this action with the filing of the "Verified Complaint" (Document No. 1) (the "original Complaint") against Defendants Eugene M. Carr III, ("Carr") and Carr Blackwell & Associates, P.C. ("Law Firm") (collectively, "Defendants") on July 29, 2021. Plaintiff Heider is a resident of the state of Idaho (Document No. 1 p. 1). Defendant Carr is a resident of Henderson County, North Carolina, and Defendant Law Firm is a North Carolina corporation with its registered office in Henderson County, North Carolina. Id. The original Complaint asserted claims for: (1) negligence constituting legal malpractice; (2) gross negligence; and (3) fraud and/or negligent misrepresentation. (Document No. 1, pp. 6-10).

Defendants filed a "…Motion to Dismiss" (Document No. 5) on September 28, 2021. The undersigned issued a "Memorandum And Recommendation" (Document No. 9) on July 19, 2022, recommending "that Defendants' motion to dismiss be <u>denied</u> as to Plaintiff's negligence, gross negligence, and negligent misrepresentation claims, but <u>granted</u> as to Plaintiff's fraud claim." (Document No. 9, p. 16). The Honorable Robert J. Conrad, Jr. adopted the "Memorandum And Recommendation" (Document No. 9) on September 21, 2022. (Document No. 13).

"Plaintiff's Motion To Quash Subpoenas" (Document No. 21) was filed on May 24, 2023. The pending motion has been fully briefed and is ripe for review and disposition. See (Document Nos. 22 and 23).

"Plaintiff's Motion For Leave Of Court To Amend Complaint" (Document No. 25) was filed on June 23, 2023. In response, Defendants filed a "Notice To The Court" (Document No. 26) stating "that they do not oppose the Motion." The Court granted the motion to amend on July 10, 2023, and Plaintiff's "First Amended Complaint" was filed that same day. (Document Nos. 27, 28).

Plaintiff's "First Amended Complaint" (the "Amended Complaint") is similar to the original Complaint and asserts "*inter alia*, legal malpractice by Carr and the Law Firm relating to the equitable distribution of marital assets to Plaintiff." (Document No. 28, p. 1). The Amended Complaint alleges that Plaintiff retained Defendants to represent her after her ex-husband Timothy Ryan Heider ("Mr. Heider") breached the "Contract Of Separation, Property Settlement, And Alimony/Spousal Support Agreement" (Document No. 28-1) (the "Original Agreement") that had been executed on January 18, 2018. (Document No. 28, p. 2).

The Amended Complaint alleges that Defendants "advised and persuaded Plaintiff" to execute an "Amendment To Contract Of Separation, Property Settlement, And Alimony/Spousal

Support Agreement" (Document No. 28-2) (the "Amended Agreement") that "contained substantially less favorable terms than the Original Agreement." (Document No. 28, p. 3). "Relying upon Carr's advice, Plaintiff executed the Amended Agreement on or about December 4, 2018." (Document No. 28, p. 4). Plaintiff contends the Amended Agreement provided her approximately $550,000 less than the 50/50 division of the marital estate she was entitled to pursuant to N.C.Gen.Stat. § 50-20(c) would have. (Document No. 28, p.7).

The Amended Complaint asserts claims for: (1) negligence – malpractice; (2) gross negligence; and (3) negligent misrepresentation. (Document No. 28, pp. 8-13).

## II. STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Specifically regarding subpoenas, the Federal Rules require a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(d)(3)(A)(iii).

3

## III.  DISCUSSION

By the pending motion, Plaintiff seeks "an order modifying and/or quashing" six subpoenas.  (Document No. 21); see also (Document Nos. 21-2; 21-3; 21-4; 21-5; and 21-6).[1] Plaintiff describes the subpoenaed individuals as follows.

> 1. Richard Lowe – Plaintiff's father, who is a retired member of the North Carolina State Bar, and has served as legal consultant/strategist to undersigned attorney.
>
> 2. James Epperson/Lauren Watkins – Plaintiff's attorney who was not engaged until after the legal relationship with Defendant ended.
>
> 3. Dustin Branham – Plaintiff's attorney for child custody purposes who was not engaged until after the legal relationship with Defendant ended.
>
> 4. Ryan Bradley – Plaintiff's prior attorney for child custody/child support purposes and who was not engaged until after the legal relationship with Defendant ended.
>
> 5. Robert Deutsch – Plaintiff's attorney who represented her in the negotiation and execution of the initial January 2018 Separation Agreement, before it was amended under the representation and advice of Defendant's counsel.

(Document No. 21-1, pp. 1-2)

Each of the subpoenas seeks five (5) categories of information.  (Document Nos. 21-2; 21-3; 21-4; 21-5; and 21-6).  The requested information seems to be identical in all but the Lowe

---

[1] The undersigned notes that two of the subpoenas appear to seek the production of documents and/or electronically stored information at a place that is more than 100 miles from where the subpoenaed person is employed. (Document Nos. 21-5; 21-6); see also Fed.R.Civ.P. 45(c)(2)(A).  Another subpoena requires compliance in a different court district. (Document No. 21-2); see also Fed.R.Civ.P. 45(d)(3)(A).  Despite the foregoing concerns about the propriety of the subpoenas and the pending motion, in the interest of judicial economy and because the subpoenas are nearly identical, the undersigned will issue this decision without further delay.

4

subpoena, and that one is still very similar to the others. Id. "Plaintiff does not object to Requests No. 1-2, and 4 in the subpoenas." (Document No. 23, p. 7).

Plaintiff contends that much of the information sought by Request 3 "and particularly paragraph 5 of each subpoena" is "subject to attorney-client privilege." (Document No. 21-1, p. 3). To the extent the subpoenas seek communications related to child support or child custody, Plaintiff further contends such information is both privileged and irrelevant. Id. However, "Plaintiff respects and acknowledges that any communications regarding marital assets, the value of the marital estate, alimony, or documents possessed by a subpoenaed party that contain information relating to the martial estate or valuation thereof are discoverable so long as non-relevant information is redacted from said communications." Id.

Plaintiff notes that "[u]nder Rule 26(b)(3), materials are protected if they include 'the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation in which the material is sought or work product of the attorney or attorneys of record in the particular action.'" (Document No. 21-1, p. 4).

In conclusion, Plaintiff requests that this Court "quash the served subpoenas or, alternatively, limit the requests only to documents purporting to contain evidence of the value of the marital estate." (Document No. 21-1, p. 6).

In response, Defendants assert that "[o]nce attorney-client privilege for a document is intentionally waived, then all communications relating to the same subject matter are no longer privileged." (Document No. 22, p. 1). "Significantly, the waiver also applies to communications between individuals/entities that were not involved in the originally disclosed communication." Id.

5

Case 3:21-cv-00387-RJC-DCK   Document 32   Filed 09/25/23   Page 5 of 10

Defendants note that "[i]n the Complaint, Plaintiff discloses contents of communications that are otherwise privileged including those related to her initial separation agreement, her revised separation agreement, her and her ex-husband's assets, equitable distribution, and other aspects of the separation and divorce." (Document No. 22, pp. 1-2). Defendants contend that based on what "Plaintiff herself disclosed in the Complaint," Plaintiff has waived her attorney-client privilege, and the information Defendants seek from Plaintiff's other counsel/advisers should be available. (Document No. 22, p. 2).[2]

In support of its argument, Defendant provides the following legal authority.

> The party asserting the attorney-client privilege has the burden of proof and must show all the following:
>
>> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.
>
> *Addison Whitney, LLC v. Cashion*, 2020 NCBC 48, ¶ 12. If any element, including waiver, is not present, then the fragile attorney-client privilege does not apply. *Id.* at ¶¶ 12 and 19. And, regarding waiver, the party seeking attorney-client protection carries the burden of proving the privilege was not waived. *State v. Farook*, 2022-NCSC-59, ¶ 31; *Connecticut Indem. Co. v. Carrier Haulers, Inc.*, 197 F.R.D. 564, 572 (W.D.N.C. 2000).

(Document No. 22, p. 5).

Defendants assert that "the question is whether the documents requested in the subpoenas concern the same subject matter of the disclosed communications." (Document No. 22, p. 6). As

---

[2] Plaintiff's "First Amended Complaint" (Document No. 28) was filed after the briefing on the pending motion. Neither side has suggested that the Amended Complaint should change the Court's analysis of the motion to quash.

noted above, Plaintiff does not object to requests 1-2, and 4 in the subpoenas. (Document No. 22, p. 7). According to Defendants, "[r]equests No. 3 and 5 are specifically tailored to request documents that are the subject matter of the disclosed communications outlined in Plaintiff's Complaint." Id. Defendants argue that "[t]he waiver applies not just to the disclosed communications with Defendants regarding the subject matter, but also to all other communications regarding the same subject matter." (Document No. 22, p. 8) (citing Addison Whitney, 2020 NCBC 48, at ¶¶ 20 and 26).

As to the subpoena for Richard Lowe ("Lowe"), Defendants argue that because he is an inactive lawyer, his "attendance at the mediation – and any other involvement in the separation/divorce – are not protected by attorney-client privilege." (Document No. 22, p. 9). If Lowe is a "consulting expert," Defendants contend that "any protections afforded would only apply after he became a consulting expert and for documents prepared in anticipation of litigation or for trial, not for those times when he was a fact witness." (Document No. 22, pp. 9-10) (citing Fed.R.Civ.P. 26(b)(3)(A)).

In reply, Plaintiff re-asserts that she "takes no issue with subpoenaed parties providing documents that contain objective information relating to valuation of the marital estate, like tax returns, banks statements, business or other property appraisals, etc." (Document No. 23, p. 3). However, Plaintiff suggests that some of "the information the Defendants are requesting is far outside the bounds of the information that Plaintiff has waived." (Document No. 23, p. 3). Plaintiff contends that

> The subject matter relating to the waiver is exclusively related to the marital estate and any valuations that arise out of the marital estate. To interpret the law as to broaden this waiver to, potentially, any attorney communications regarding the Heiders' divorce and communications regarding legal strategy in the instant case would

7

> be a miscarriage of justice and a rewriting of the rules governing discovery.

Id.

In further support of quashing parts of the pending subpoenas, Plaintiff argues that the work product doctrine, in addition to attorney-client privilege, is applicable here. (Document No. 23, p. 5) (citing Fed.R.Civ.P. 26(b)(3)). "While attorney-client privilege protects communication between the client and legal counsel, the work product doctrine protects all communications an attorney, consultant, or expert has made in anticipation of a trial." Id.

By way of example, Plaintiff argues that "required production of communications from Richard Lowe, Plaintiff's father and retired attorney and undersigned counsel's consultant, would divulge most of undersigned's legal opinions, theories, and work on the case." (Document No. 23, p. 6). Plaintiff also notes that her current counsel was engaged in this matter with the help of Lowe, and that Lowe was a party and signatory to the Amended Settlement Agreement [which is a key part of the basis for her claims against Defendants]. (Document No. 23, pp. 6-7, n.2-3)(citing Document No. 6-3); see also (Document No. 28-2).

In conclusion, Plaintiff argues "the subpoenaed attorneys and Lowe should be protected from disclosing 1) any unwaived communications or 2) work product that they have made or exchanged in anticipation of litigation or that they have received from undersigned counsel, if any." (Document No. 23, p. 9). Specifically, the subpoenas should be quashed and/or modified "such that the subpoenaed parties are only required to produce documents relating to the valuation of the marital estate." Id.

The undersigned finds Plaintiff's arguments persuasive and agrees that the pending subpoenas should be modified pursuant to Fed.R.Civ.P. 45(d)(3)(A).

First, it appears to be undisputed that all the subpoenaed parties should provide responses to Requests, 1, 2, and 4 of the subpoenas. (Document No. 22, p. 7)(citing Document No. 21-1, p. 3); see also (Document No. 23, p. 7); (Document Nos. 21-2; 21-3; 21-4; 21-5; and 21-6).

Next, the undersigned finds that there is little, if any, dispute regarding Request No. 3 of the Epperson, Watkins, Branham, Bradley, and Deutsch subpoenas (Document Nos. 21-3; 21-4; 21-5; and 21-6). As such, "documents and calculations evidencing Heider assets (collectively or individually) and the valuations thereof" shall be produced. See (Document Nos. 21-3; 21-4; 21-5; and 21-6).

Request No. 5 of the Epperson, Watkins, Branham, Bradley, and Deutsch subpoenas shall be modified. (Document Nos. 21-3; 21-4; 21-5; and 21-6). The subpoenaed former counsel shall not produce "[a]ny and all other correspondence, communications, and documents that relate to: (1) [the Heiders'] marriage, separation, [and] divorce." Id. Rather, the subpoenaed former counsel shall produce correspondence, communications, and documents related to the Heiders' marital assets and valuations, including information about their marital estate, settlement agreements between the two, compliance with settlement agreements, and equitable distribution – this information shall be redacted to preclude disclosure of any legal opinions, advice, theories, or strategies.

As to the Lowe subpoena, which has a different Request No. 3, Mr. Lowe shall produce the requested correspondence related to the Heiders': assets, marital estate, settlement agreements, and equitable distribution. However, such correspondence shall also be redacted to preclude disclosure of any legal opinions, advice, theories, or strategies. See (Document No. 21-2).

Finally, as to Request No. 5 of the Lowe subpoena, the undersigned is not persuaded that Plaintiff has waived the protections of attorney-client privilege and/or the work product doctrine.

9

Mr. Lowe is <u>not</u> expected to produce "[a]ny and all other correspondence, communications, and documents that relate to [the Heiders'] marriage, separation, and/or divorce" as requested in Request No. 5. <u>Id.</u>

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion To Quash Subpoenas" (Document No. 21) is **GRANTED in part** and **DENIED in part**, as described herein.

**SO ORDERED**.

Signed: September 22, 2023

David C. Keesler
United States Magistrate Judge